FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 13, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TRACY M.,

    Plaintiff,

    v.

KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL
SECURITY,[1]

    Defendant.

No. 2:19-CV-00234-RHW

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, IN PART, AND REMANDING FOR ADDITIONAL PROCEEDINGS**

    Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 11 & 12. Plaintiff brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1**

applications for Disability Insurance Benefits (DIB) under Title II and for

Supplemental Security Income (SSI) under Title XVI of the Social Security Act,

42 U.S.C. §§ 401-434, 1381-1383f.  After reviewing the administrative record and

briefs filed by the parties, the Court is now fully informed.  For the reasons set

forth below, the Court **GRANTS, in part,** Plaintiff's Motion for Summary

Judgment, **DENIES** Defendant's Motion for Summary Judgment, and **REMANDS**

the case for additional proceedings consistent with this Order.

## I.    Jurisdiction

Plaintiff filed an application for DIB on December 21, 2015, AR 87, and an

application for SSI on July 1, 2016, AR 234-42.[2]  Her alleged onset date of

disability is July 22, 2013.  AR 231.  At application, Plaintiff alleged that grand

mal seizures and nerve damage in her left arm limited her ability to work.  AR 303.

Plaintiff's application for DIB was initially denied on January 7, 2016, AR 107-09,

---

[2]The Notice of Hearing states that the SSI application was dated July 8,

2016, AR 136, but the application in the record is dated July 1, 2016, AR 242.

However, the Court notes that an application for DIB is considered an oral inquiry

for SSI and qualifies as a protective filing date for such an application.  20 C.F.R. §

416.350; POMS SI 00601.027.  Should Plaintiff be found eligible for benefits, an

accurate protective filing date for the SSI application must be determined.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 2**

and on reconsideration on May 20, 2016, AR 111-13.  Plaintiff's application for SSI was consolidated with the application for DIB at the hearing level.  AR 136.

A hearing with Administrative Law Judge ("ALJ") Timothy Mangrum was held on February 28, 2018.  AR 40-61.  Plaintiff appeared with her attorney and testified at the hearing.  *Id*.  The ALJ also took the testimony of vocational expert Mark Harrington.  *Id*.  On May 16, 2018, the ALJ issued a decision finding Plaintiff ineligible for disability benefits.  AR 15-29.  The Appeals Council denied Plaintiff's request for review on May 2, 2019, AR 1-5, making the ALJ's ruling the "final decision" of the Commissioner.

Plaintiff timely filed the present action challenging the denial of benefits on July 8, 2019.  ECF No. 1.  Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do her previous work, but cannot, considering claimant's age, education,

and work experience, engage in any other substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit.  20 C.F.R. §§ 404.1572, 416.972.  If the claimant is engaged in substantial activity, she is not entitled to disability benefits.  20 C.F.R. §§ 404.1571, 416.971.  If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence.  20 C.F.R. §§ 404.1509, 416.909.  If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required.  Otherwise, the evaluation proceeds to the third step.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 4**

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity (RFC) enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue,* 700 F.3d 386, 388-89 (9th Cir. 2012).

///

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 5**

1

### III.    Standard of Review

2      A district court's review of a final decision of the Commissioner is governed

3  by 42 U.S.C. § 405(g).  42 U.S.C. § 1383(c)(3).  The scope of review under §

4  405(g) is limited, and the Commissioner's decision will be disturbed "only if it is

5  not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*,

6  698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing § 405(g)).  Substantial evidence

7  means "more than a mere scintilla but less than a preponderance; it is such relevant

8  evidence as a reasonable mind might accept as adequate to support a conclusion."

9  *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quoting *Andrews v.*

10  *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted).

11  In determining whether the Commissioner's findings are supported by substantial

12  evidence, "a reviewing court must consider the entire record as a whole and may

13  not affirm simply by isolating a specific quantum of supporting evidence."

14  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*

15  *v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

16      In reviewing a denial of benefits, a district court may not substitute its

17  judgment for that of the ALJ.  *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.

18  1992).  "The court will uphold the ALJ's conclusion when the evidence is

19  susceptible to more than one rational interpretation."  *Tommasetti v. Astrue*, 533

20  F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 6

1  decision on account of an error that is harmless.  *Id*.  An error is harmless where it

2  is "inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*.

3  (quotation and citation omitted).  The burden of showing that an error is harmful

4  generally falls upon the party appealing the ALJ's decision.  *Shinseki v. Sanders*,

5  556 U.S. 396, 409-10 (2009).

6  ### IV.    Statement of Facts

7  The facts of the case are set forth in detail in the transcript of proceedings

8  and only briefly summarized here.  Plaintiff was 42 years old at the alleged date of

9  onset.  AR 231.  She alleged that she completed the twelfth grade.  AR 304.  She is

10  able to communicate in English.  AR 302.  Plaintiff has past work as a chef and as

11  an assistant manager at a lake resort.  AR 275, 304.  Plaintiff reported that she

12  stopped working on July 22, 2013, because of her conditions.  AR 303.

13  ### V.    The ALJ's Findings

14  The ALJ determined that Plaintiff was not under a disability within the

15  meaning of the Act from the date of the alleged onset date, July 22, 2013, through

16  the date of his decision, May 16, 2018.  AR 15-29.

17  **At step one**, the ALJ found that Plaintiff had not engaged in substantial

18  gainful activity since the alleged date of onset, July 22, 2013 (citing 20 C.F.R. §§

19  404.1571 *et seq*., and 416.971 *et seq*.).  AR 17.

20  **At step two**, the ALJ found Plaintiff had the following severe impairments:

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 7

seizures; nerve palsy of the left upper extremity; left ulnar neuropathy; left radial neuropathy; left mild carpal tunnel syndrome; and alcohol abuse.  AR 18 (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)).

**At step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1.  AR 18 (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)).  AR 18.

**At step four**, the ALJ found Plaintiff had the residual functional capacity (RFC) to perform a work at the light exertional level as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with the following limitations:

> she can occasionally climb stairs; she can never climb ladders, ropes, or scaffolds; she can occasionally reach, handle, or finger with the left (non-dominant) upper extremity; she should avoid concentrated exposure to hazards (such as heights and moving machinery) and vibrations; she is limited to jobs with an SVP of no greater than 2 and few changes in the workplace; she can have occasional interaction with the public or coworkers; she would be off task and not productive for up to 10 percent of the work day.

AR 19.  The ALJ identified her past relevant work as line cook and found that Plaintiff was unable to perform this past relevant work.  AR 27.

**At step five**, the ALJ found that, in light of her age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the jobs of groover stripper

operator, machine offbearer, and blending tank tender. AR 27-28. Based on this step five determination, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from July 22, 2013, through the date of the decision, May 16, 2018. AR 28 (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)).

## VI.    Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues the ALJ erred by: (1) failing to properly weigh the medical opinion evidence; (2) failing to properly consider Plaintiff's symptom statements; (3) failing to properly weigh statements from lay witnesses and (4) failing to make a proper step five determination. ECF No. 11. Additionally, Plaintiff requests that the case be remanded for an immediate award of benefits. *Id*.

## VII.    Discussion

**A.    The ALJ failed to properly weigh the medical opinion evidence.**

Plaintiff challenges the weight the ALJ gave to the opinions of William Clark, M.D., Alyssa Jo Stickney, M.D., Mari Hunter, ARNP, and Sharon Eder, M.D. ECF No. 11 at 5-8, 12-13.[3]

---

[3]Plaintiff discussed other opinions in the record, but did not argue that the ALJ erred in the weight she assigned these other opinions. ECF No. 11 at 8-12.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 9

1    The Ninth Circuit has distinguished between three classes of medical

2    providers in defining the weight to be given to their opinions: (1) treating

3    providers, those who actually treat the claimant; (2) examining providers, those

4    who examine but do not treat the claimant; and (3) non-examining providers, those

5    who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830

6    (9th Cir. 1996). A treating provider's opinion is given the most weight, followed

7    by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In

8    the absence of a contrary opinion, a treating or examining provider's opinion may

9    not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a

10   treating or examining provider's opinion is contradicted, it may be discounted for

11   "specific and legitimate reasons that are supported by substantial evidence in the

12   record." *Id*. at 830-31.

13       **1.    William Clarke, M.D.**

14       On September 29, 2014, Plaintiff presented to Dr. Clarke reporting multiple

15   seizures since June of 2014 when she was seen in the emergency room. AR 561.

16   Plaintiff reported being hospitalized and put on Keppra, but was not given any

17   medications on discharge, alleging that she was "told that she was not going to get

18   any meds until she went into treatment program." *Id*. Plaintiff was accompanied

19   by her significant other who stated that "she is not an alcoholic, but was just drunk

20   at the time of her ER visit." *Id*. Dr. Clarke started her on Keppra and advised her

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 10

to discontinue the use of alcohol.  AR 564.  A screening for alcohol showed "no measurable amount" in her system.  AR. 566.  Dr. Clarke stated in his treatment notes that Plaintiff could do "NO driving, heights, dangerous equipment, open electricity."  AR 564.

The ALJ gave these restrictions little weight stating that "these were apparently temporary restrictions during a period of worsening of seizures, and there was no indication as to how long he intended for them to last."  AR 26. Despite finding these limitations as temporary, the ALJ found that "the claimant has been found to have precautionary limitations due to seizures, including no climbing of ladders, ropes, or scaffolds and avoidance of concentrated exposure to hazards (such as heights and moving machinery)."  *Id*.

The Ninth Circuit has found the following:

> To establish a claimant's eligibility for disability benefits under the Social Security Act, it must be shown that: (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than **twelve months**; and (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 42 U.S.C. § 423(d)(2)(A) (emphasis added).  This required twelve months is referred to as the durational requirement.  The Ninth Circuit has also found that a provider's opinion can be

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 11

1    rejected if it is temporary.  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155,

2    1165 (9th Cir. 2008) (rejecting an opinion that the claimant could not tolerate a

3    return to sedentary or light work because two months later the same provider

4    released the claimant to return to full-time work).

5        While Defendant relies on the Ninth Circuit's finding in *Carmickle*, ECF

6    No. 12 at 10, this case is not analogous.  Dr. Clarke treated Plaintiff on two

7    occasions, a week apart.  This treatment occurred following a sudden onset of

8    seizure activity, AR 561, 572 (stating that her seizures started in May of 2014 and

9    increased over the summer of 2014), and after she was discharged from the

10   hospital with no medications to treat these seizures, AR 561.  Dr. Clarke provided

11   no timeframe for the restrictions he set forth on September 29, 2014.  When he saw

12   Plaintiff a few days later, she reported that she was not drinking, that she was

13   taking her medications, and that she had not had a seizure since September 24,

14   2014.  AR 557.  Following the second appointment, Dr. Clarke concluded that

15   Plaintiff had chronic ethanol abuse in short-term remission and instructed her to

16   maintain abstinence and continue to take her Keppra.  AR 559.  He did not provide

17   a second opinion that Plaintiff could return to work, nor did his opinion state that

18   the restrictions he set forth were temporary.  Therefore, this case is distinguishable

19   from *Carmickle*.  The ALJ's finding that the opinion was temporary is only an

20   implication, AR 26 ("apparently temporary restrictions"), and is not supported by

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 12

1   substantial evidence.  Therefore, it does not support rejecting the opinion.

2        Defendant argues that any error would be harmless since the RFC

3   determination stated that Plaintiff should avoid concentrated exposure to hazards

4   (such as heights and moving machinery) and vibrations."  ECF No. 12 at 11.

5   However, avoiding concentrated exposure is not the same as a preclusion from

6   such activities.  Therefore, the ALJ's error in the treatment of Dr. Clarke's opinion

7   is not harmless.

8        The ALJ's implication that the restrictions were temporary appear to be

9   based on the assumption that if Plaintiff's drinking ended, the seizures would also

10  end.  However, without an explicit finding that he anticipated Plaintiff's seizures to

11  improve with the abstinence form alcohol, the Court cannot review the issue.  *See*

12  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (The Court will "review only the

13  reasons provided by the ALJ in the disability determination and may not affirm the

14  ALJ on a ground upon which he did not rely.").  Furthermore, a finding that

15  Plaintiff's impairments would improve with alcohol cessation requires a different

16  analysis by the ALJ.  *See Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir.

17  2001) ("If, and only if, the ALJ found that Bustamante was disabled under the five-

18  step inquiry, should the ALJ have evaluated whether Bustamante would still be

19  disabled if he stopped using alcohol."); S.S.R. 13-2p (requiring the ALJ to first

20  determine if a claimant is disabled with the symptoms caused by alcohol and drug

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 13

1   use and then complete a second sequential evaluation analysis removing any

2   symptoms caused by the alcohol or drug use).

3           While the ALJ erred in the treatment of the opinion, the appropriate

4   resolution is to remand the case for additional proceedings to readdress the

5   opinion.  If Plaintiff is found disabled with the limitations resulting from Plaintiff's

6   alcohol abuse, then the ALJ must properly determine if the alcohol abuse was

7   material under S.S.R. 13-2p.

8           **2.     Alyssa Jo Stickney, M.D.**

9           On November 5, 2014, Dr. Stickney completed a Physical Functional

10  Evaluation for the Washington State Department of Social and Health Services

11  (DSHS).  AR 416-18.  She stated that Plaintiff "has been having frequent seizures

12  – she's unable to work at heights, in or near water, in customer service positions

13  [and] she doesn't drive.  It seems impractical for her to work [at] all until seizures

14  under control."  AR 417.  She opined that the seizures were severe, defined as an

15  "[i]nability to perform one or more basic work-related activities," affecting all

16  basic work activities.  *Id*.  She then opined that Plaintiff was severely limited,

17  which is defined as "[u]nable to meet the demands of sedentary work.  AR 418.

18  She estimated that the current limitation on work activities would persist with

19  available medical treatment for six months.  *Id*.  She further opined that Plaintiff's

20  impairments were not primarily the result of alcohol or drug use in the past 60

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 14**

1  days, stating that the "seizures seem unrelated to etoh, but unclear." *Id*. She did

2  recommend alcohol/drug treatment. *Id*.

3      The ALJ assigned the opinion little weight, stating that Dr. Stickney

4  "indicated her opinion applied for only six months" and for the same reasons the

5  ALJ provided for rejecting Ms. Hunter's June 2016 opinion: that the record as a

6  whole was not consistent with the opinion giving the examples of activities and

7  non-compliance with treatment recommendations. AR 26.

8      The ALJ's first reason for rejecting the opinion, that it was temporary, is not

9  supported in the record. While *Carmickle* supports the conclusion that temporary

10  opinions can be rejected by the ALJ, 533 F.3d at 1165, it is again not analogous to

11  this case. Dr. Stickney estimated that Plaintiff's limitations on work activity would

12  persist for six months "with available medical treatment." AR 418. While she

13  stated that the impairments were not primarily the result of alcohol use in the last

14  sixty days, she stated that it was unclear if the seizures were related to alcohol use.

15  Furthermore, the medical treatment she addressed in providing her estimated

16  timeframe included alcohol treatment. *Id*. In August of 2015, more than six

17  months after the opinion, Plaintiff reported her seizures continued to be an issue

18  despite the EEG showing no seizure activity, and she had been diagnosed with

19  pseudoseizures. AR 635. Additionally, Plaintiff reported that she was still

20  drinking. *Id*. Therefore, unlike in *Carmicle*, there is no evidence that Plaintiff's

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 15

1   impairments actually improved, and this reason fails to meet the specific and

2   legitimate standard.  If the ALJ was implying that the opinion was temporary

3   because the "available medical treatment" included treatment for alcohol abuse and

4   Plaintiff failed to follow this prescribed treatment, then he was required to follow

5   the analysis set forth in S.S.R. 13-2p.

6       The ALJ's second reason for rejecting the opinion, that it is inconsistent with

7   the record as a whole, is not specific and legitimate.  Here, the ALJ's general

8   conclusion that "for the same reasons noted above in discussing Ms. Hunter's June

9   2016 opinion, such severity of limitation is not supported by the record as a

10  whole," AR 26, is not specific enough to meet the specific and legitimate standard.

11  The ALJ is required to do more than offer his conclusions, he "must set forth his

12  interpretations and explain why they, rather than the doctors', are correct."

13  *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

14      On remand, the ALJ will readdress the opinion of Dr. Stickney.  If the ALJ's

15  conclusion that the opinion was temporary was premised on the implication that

16  Plaintiff's impairments would improve with alcohol cessation, then the ALJ must

17  determine whether the alcohol use was material to disability under S.S.R. 13-2p.

18  **C.    Mari Hunter, ARNP**

19      On June 20, 2016, Nurse Hunter completed a Physical Functional Evaluation

20  for DSHS.  AR. 662-64.  She stated that Plaintiff was diagnosed with seizures

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 16

which had a moderate limitation on all basic work activities at times and a left-hand dysfunction with a marked limitation in the abilities to lift, carry, handle, push, and pull. AR 663. She opined that Plaintiff was severely limited and estimated that the current limitation on work activities will persist for 99 months with available medical treatment. AR 664. She stated that the current impairments were not primarily the result of alcohol or drug use within the prior 60 days and did not recommend alcohol/drug treatment. *Id*.

The ALJ assigned the opinion little weight because the opinion was not consistent with the record as a whole, including daily activities and Plaintiff's non-compliance with treatment recommendations. AR 26. Additionally, the ALJ found that "[a]s to the upper extremity symptoms, the record indicates these improved notably with physical therapy and that the claimant does use her left hand occasionally." *Id*.

On June 8, 2016, Nurse Hunter completed an Able-Bodied Adults Without Dependents Requirement Medical Report for DSHS. AR 818. She opined that Plaintiff had a mental and/or physical illness or disability, temporary or permanent, which would prevent her from working 20 hours a week. *Id*. She stated that these conditions would prevent her from working 20 hours a week for six to nine months. *Id*. The ALJ gave this opinion little weight, stating "[l]ittle weight is accorded where Ms. Hunter indicated this limitation would apply for only 6-9

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 17

months.  Furthermore, this form contains no explanation supporting the opinion given therein, with no reference to any objective medical findings."  AR 26.

A Nurse Practitioner is not an acceptable medical source in this case because this case was filed prior to March 27, 2017.  20 C.F.R. §§ 404.1502(a), 416.902(a).  Therefore, the ALJ can reject Nurse Hunter's opinion with reasons germane to the opinion.  *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  Here, the case is being remanded to address the opinions of two acceptable medical sources.  Therefore, the ALJ will reconsider Nurse Hunter's opinion on remand as well.

### D.    Sharon Eder, M.D.

Plaintiff also challenged the great weight assigned to Dr. Eder's opinion.  ECF No. 11 at 8-13.  Since the case is being remanded for the ALJ to readdress the medical opinions addressed above, the ALJ will also address Dr. Eder's opinion on remand.

## B.    The ALJ did not erred in evaluating Plaintiff's symptom statements.

Plaintiff argues that the ALJ erred in evaluating her symptom testimony.  ECF No. 11 at 13-18.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is reliable.  *Tommasetti,* 533 F.3d at 1039.  First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 18

1    produce some degree of the symptoms alleged.  *Id.*  Second, if the claimant meets

2    this threshold, and there is no affirmative evidence of malingering, "the ALJ can

3    reject the claimant's testimony about the severity of [her] symptoms only by

4    offering specific, clear and convincing reasons for doing so." *Id.*

5          Here, the ALJ found that the medically determinable impairments could

6    reasonably be expected to produce the symptoms Plaintiff alleges; however, the

7    ALJ determined that Plaintiff's "statements concerning the intensity, persistence

8    and limiting effects of these symptoms are not credible to the extent they are

9    inconsistent with the residual functional capacity assessment for the reasons

10   explained in this decision."  AR 20.  The ALJ provided three reasons for rejecting

11   Plaintiff's symptom statements: (1) her activities of daily living belie the alleged

12   severity of symptoms; (2) she was non-compliant with treatment recommendation;

13   and (3) she had an inconsistent work history.  AR 20-25.

14         The ALJ's first reason for rejecting Plaintiff's symptom statements, that they

15   were inconsistent with her daily activities, is not specific, clear and convincing.  A

16   claimant's daily activities may support an adverse credibility finding if (1) the

17   claimant's activities contradict her other testimony, or (2) "the claimant is able to

18   spend a substantial part of his day engaged in pursuits involving performance of

19   physical functions that are transferable to a work setting."  *Orn*, 495 F.3d at 639

20   (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  "The ALJ must make

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 19

1    'specific findings relating to [the daily] activities' and their transferability to

2    conclude that a claimant's daily activities warrant an adverse credibility

3    determination." *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir.

4    2005)).  A claimant need not be "utterly incapacitated" to be eligible for benefits.

5    *Fair*, 885 F.2d at 603.  Here, the ALJ found that Plaintiff's ability to perform tasks

6    such as personal care, meal preparation, household chores, grocery shopping,

7    coloring, gardening, using a computer, and playing cards were inconsistent with

8    her reported symptoms.  AR 20-21.  The Ninth Circuit has warned ALJs against

9    using simple household activities against a person when evaluating their testimony:

10          We have repeatedly warned that ALJs must be especially cautious in
            concluding that daily activities are inconsistent with testimony about
11          pain, because impairments that would unquestionably preclude work and
            all the pressures of a workplace environment will often be consistent with
12          doing more than merely resting in bed all day.

13    *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).  Therefore, this reason is

14    not specific, clear and convincing.

15          The ALJ's second reason for rejecting Plaintiff's symptom statements, that

16    she was noncompliant with treatment recommendations, is specific, clear and

17    convincing.  Noncompliance with medical care or unexplained or inadequately

18    explained reasons for failing to seek medical treatment can cast doubt on a

19    claimant's subjective complaints.  20 C.F.R. §§ 404.1530, 416.930; *Fair*, 885 F.2d

20    at 603.  The ALJ found that Plaintiff's "non-compliance with treatment

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 20

recommendations for seizures significantly undermines the alleged severity and limiting effects of this condition.  It is reasonable to assume that, were her seizures as severe, frequent, and limiting as alleged, she would be compliant with recommended treatment in order to alleviate her symptoms."  AR 23.

From the onset of Plaintiff's seizures, providers have linked her drinking to her seizure activity, in whole or in part, and instructed her to stop drinking. Despite this, Plaintiff has not stopped drinking.

Her first seizure was in August of 2013.  AR 701.  Plaintiff was diagnosed with alcoholism, alcohol withdrawal, and a grand mal seizure.  AR 694.  She was encouraged to abstain from alcohol.  AR 696.

On September 15, 2014, Plaintiff presented as "a 43-year-old intoxicated female brought with a probably seizure."  AR 471.  Plaintiff admitted that she drank two beers daily, but her friend stated that she drinks "significantly more." *Id*.  Her blood alcohol level was 403.  AR 472, 474.  She was offered admission for medical detox and placement for alcohol treatment, and Plaintiff stated she had no intention of stopping her drinking.  AR 472.  Dr. Zurcher stated that "[t]reatment for alcohol related seizures is not successful, and I do not feel any further evaluation is warranted given the patient's noncompliance and inability to stop drinking at this time," and he was not comfortable prescribing seizure medication. *Id*.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 21

1         Five days later, Plaintiff was again seen at the emergency room for seizure

2  activity.  AR 477-78.  She admitted to drinking 3-4 beers a day, but her significant

3  other, John, stated she can drink a fifth of whiskey in one sitting.  AR 477.  Her

4  blood alcohol level was zero.  AR 478.  She was diagnosed with "[r]ecurrent

5  seizure with increasing seizure activity that seems to be somewhat unrelated to her

6  alcohol having had a seizure with it high at 403 and low at 0.  She has likely new

7  underlying seizure disorder complicated by her alcohol consumption."  *Id*.  She

8  was told to avoid alcohol.  AR 479.

9         On September 29, 2014, Dr. Clark diagnosed Plaintiff with chronic ethanol

10  abuse in short-term remission.  AR 564.  He advised her to discontinue all alcohol

11  use.  *Id*.

12         On October 2, 2014, Plaintiff was instructed by Dr. Clarke to maintain

13  alcohol abstinence.  AR 559.

14         On October 17, 2014, Plaintiff was seen by Dr. Hoover.  AR 548-51.  At

15  first, Plaintiff denied drinking, but when pressed she admitted to drinking a beer

16  three days prior.  AR 548.  Dr. Hoover stated that Plaintiff smelled of alcohol.  AR

17  551.  Her blood alcohol level was 159.  AR 555.

18         On November 5, 2014, Plaintiff reported no alcohol for two weeks, but also

19  reported a maximum of two beers and one whiskey per night and her significant

20  other reported that the beers were 32 ounces each.  AR 448.  Dr. Stickney stated

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 22

1  that it was unclear whether the seizure disorder "is completely related to etoh or

2  not – she and John are very adamant that she hasn't had a drink.  She's not willing

3  to explore etoh treatment at all."  AR 449.

4      On December 12, 2014, Plaintiff reported additional seizure activity and no

5  alcohol use since the last ER visit, "John has checked all her hiding places and

6  spoken with cashiers at the stores around town and he feels she's telling the truth."

7  AR 450.

8      On January 26, 2015, neurologist Dr. Doherty stated that alcohol use made

9  the seizure events more likely, copying the prior neurology notes citing two to

10  three 16 to 24 ounce beers with no interest to decrease.  AR 380.  He provided the

11  following instruction to Plaintiff: "Whatever you can do to cut down on alcohol

12  use may help your neuropathy."  AR 383.

13      The EEG on January 30, 2015 was normal.  AR 385.

14      On February 17, 2015, Plaintiff reported that she continued to consume beer

15  a few nights a week but denied drinking to intoxication: "She does not feel she has

16  a drinking problem and declines the need for referral to discuss treatment options."

17  AR 579.  Nicole Fortier, ARNP at the Swedish Epilepsy Center stated that Plaintiff

18  smelled of alcohol.  AR 580.  She encouraged her to abstain from alcohol

19  consumption.  AR 581.

20

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 23

The EEG on April 20-21, 2015, captured two non-epileptic events.  AR 391-92.

On August 10, 2015, Plaintiff reported that her last drink was a couple of beers a few days ago.  AR 453.  She was diagnosed with alcohol abuse and the provider discussed zero alcohol use with Plaintiff.  AR 454.

On August 21, 2015, Plaintiff reported drinking alcohol several times per week.  AR 409.

On November 11, 2015, Plaintiff appeared "intoxicated and unable to articulate what happened to arm," and was treated for a fracture.  AR 456, 786.

On December 3, 2015, Dr. Stickney stated that Plaintiff was "actively drinking with pronounced etoh odor today (discussed dangers of etoh with seizure disorder in detail), so there may be parts of history that are incomplete."  AR 458.

On January 20, 2016, Dr. Linn stated that Plaintiff "is going to follow-up with neurology regarding her seizures and how this may be related to her transient nerve palsy."  AR 487.  However, Plaintiff was never seen by a neurologist after 2015.

On February 11, 2016, Dr. Stout stated that Plaintiff "smells of alcohol and is obviously intoxicated on today's visit at 8:00 in the morning."  AR 504.

On June 8, 2016, Plaintiff and her partner reported that she had not had hard alcohol in over a year and only an occasional beer.  AR 814.  Nurse Hunter stated

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 24

the following:

> We did discuss that seizures result in brain damage and not controlling
> them is a poor health choice, we also discussed how ETOH and caffeine
> affect seizures, both of which she still uses to some degree. I do have
> a high suspicion and from her HX diagnostic indication, that these are
> not epileptic seizures and may not be refractory to medications.

AR 816.

On September 2016, Plaintiff reported considering rehabilitation for alcohol abuse. AR 803, 805.

On April 5, 2017, Nurse Hunter stated Plaintiff's diagnoses was seizures with unknown etiology and alcohol abuse. AR 799.

On April 12, 2017, Plaintiff denied alcohol abuse, AR 777, but Dr. Bauer stated that there was a very strong smell of alcohol anywhere near her, AR 778, 791. Plaintiff refused a breathalyzer. AR 788. Dr. Bauer questioned whether Plaintiff's seizure was possibly related to alcohol. AR 779. She discussed seeing a counselor and discussed alcohol abuse, withdrawal, and treatment. AR 780, 790.

On August 24, 2017, Plaintiff "was strongly encouraged to not drink as much and actually, when she was confronted with the changes in labs she seemed to withdraw and not be as engaged, confirming that she is probably drinking a lot more than just an occasionally beer." AR 843.

Plaintiff argues that she does not have proper insight into her seizures so her failure to comply with treatment cannot be used to disregard her symptom

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 25

1    statements.  ECF No. 11 at 16.  However, the record demonstrates that Plaintiff

2    was told that her seizures were related or were possibility related to her drinking

3    and that she needed to stop drinking on multiple occasions.  She was offered detox

4    and treatment for alcohol abuse on multiple occasions.  Despite this, Plaintiff

5    continued to drink.  Therefore, Plaintiff's argument is not persuasive.

6         The ALJ's final reason for rejecting Plaintiff's symptom statements, that she

7    had an inconsistent work history, is specific, clear and convincing.  An ALJ's

8    finding that a claimant had a limited work history and "ha[d] shown little

9    propensity to work in her lifetime" is a specific, clear, and convincing reasons for

10   discounting the claimant's symptom statements.  *Thomas v. Barnhart*, 278 F.3d

11   947, 959 (9th Cir. 2002).  Here, the ALJ found that the record "indicates that the

12   claimant worked inconsistently and sporadically well before the alleged disability

13   onset date and well before she began having seizures (which her testimony

14   describes as her main issue)," and found that this "raises a question as to whether

15   the claimant's continuing unemployment is actually due to her medical

16   impairments."  AR 25.  The ALJ cited Plaintiff's employment records showing

17   multiple jobs with low income reported from each job.  AR 248-51.  For example,

18   in 2001, Plaintiff worked at three restaurants earning $595.57 at the first, $502.50

19   at the second, and $1,655.14 third.  AR 248.  She did not report any income in

20   2002.  *Id*.  Plaintiff had a single employer in 2003, and earned a total of $5,186.27.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT** ~ 26

*Id.* She had six employers in 2004, and earned a total of $3,591.55. AR 248-49.

She had two employers in 2005, earning a total of $9,130.58. AR 249. She then

had the same employer in 2006, 2007, 2008, 2009, and 2010, earning $6,388.00,

$6,400.00, $4,115.70, $6,827.18, and $4,104.00 respectively for each of those

years. AR 249-50. She had a single employer in 2011, earning a total of $600.00.

AR 250. She had three employers in 2012, earning a total of $13,202.63. Plaintiff

reported that she stopped working on July 22, 2013, because of her impairments.

AR 303. The only year that Plaintiff's average monthly income met the substantial

gainful activity threshold was 2012. *See* POMS DI 40501.015 (Tables of SGA

Earnings Guidelines and Effective Dates Based on Year of Work Activity).

Therefore, the record supports the ALJ's conclusion that her past work history calls

her continued unemployment into question.

Here, the first of the ALJ's three reasons for rejecting Plaintiff's symptom

statements did not meet the specific, clear and convincing standard. However, this

does not rise to harmful error because the remaining reasons for rejecting her

statements were sufficient. *See Carmickle,* 533 F.3d at 1163 (upholding an adverse

credibility finding where the ALJ provided four reasons to discredit the claimant,

two of which were invalid); *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190,

1197 (9th Cir. 2004) (affirming a credibility finding where one of several reasons

was unsupported by the record); *Tommasetti*, 533 F.3d at 1038 (an error is

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 27

harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination"). Therefore, the ALJ is not required to address Plaintiff's symptom statements made through May 16, 2018, on remand. He is only required to address any new testimony presented by Plaintiff in any remand proceedings he deems appropriate.

**C.    The ALJ did not err in his treatment of lay witness testimony.**

Plaintiff challenges the ALJ's treatment of the statements form Plaintiff's prior partner, John. ECF No. 11 at 18.

Lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050 (9th Cir. 2006). "[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition." *Dodrill*, 12 F.3d at 918-19. An ALJ must give "germane" reasons to discount evidence from "other sources," such as a lay witness. *Id*. at 919.

John completed a Seizures Questionnaire on January 7, 2016, detailing the seizure activity he witnessed and stating that he cannot give a precise count on the number of seizures, "I would say in the hundreds." AR 320-21. The ALJ rejected John's statements because he reported significantly more seizures than Plaintiff reported to her providers. AR 26-27. Plaintiff challenges this argument by asserting that the ALJ only counted the grand mal seizures she reported to her

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 28

providers and not the total number of seizures, which also included medium and small seizures. ECF No. 11 at 3, 18. However, John's statement describes a single type of seizure. AR 312 ("They all seem about the same as I have described."). He stated that during these seizures Plaintiff loses consciousness, loses bladder or bowel control, and bites her tongue. AR 320. Therefore, Plaintiff's argument that the ALJ only counted the grand mal seizures and John counted all the seizures, including grad mal, medium, and small seizures, is not supported in the record. The ALJ is not required to address John's statements made through May 16, 2018, on remand.

**D.     The ALJ is required to make a new step five determination.**

Plaintiff challenged the ALJ's step five determination by asserting that the ALJ's hypothetical to the vocational excerpt was based on an incomplete RFC. ECF No. 11 at 18-20. This challenge is premised on Plaintiff's argument that the ALJ erred in his treatment of the medical opinions, Plaintiff's statements, and the statements of the lay witness. *Id*. As addressed above, the Court found error in the ALJ's treatment of the medical opinions, but did not find harmful error in the treatment of Plaintiff's statements or those of the lay witness. Nonetheless, on remand, the ALJ is required to make a new step five determination after readdressing the medical opinions in the record.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 29**

# VIII.  Conclusion

Plaintiff requests that this Court remand the case for an immediate award of benefits.  ECF No. 11.

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court.  *McAllister v.  Sullivan*, 888 F.2d 599, 603 (9th Cir.  1989).  Reversing and awarding benefits is appropriate when (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court remands for an award of benefits.  *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, the ALJ erred in his treatment of medical opinions in the file. However, even if these opinions were credited as true, the ALJ would be required to determine whether Plaintiff's alcohol use disorder was material to the finding of

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 30

disability.  Therefore, there would continue to be outstanding issues that would need to be addressed.  As such, remand for additional proceedings is appropriate in this case.

Upon remand, the ALJ will readdress the medical opinions in the file and provide legally sufficient reasons for not incorporating any limitations opined by treating or examining providers into the RFC determination.  The ALJ will not address Plaintiff's symptom statements or lay witness statements prior to the date of his opinion, May 16, 2018.  He may accept additional medical evidence and statements from Plaintiff and witnesses concerning Plaintiff's limitations after May 16, 2018.  Any decision upon remand must follow the evaluation process set for in S.S.R. 13-2p concerning the materiality of Plaintiff's alcohol use disorder.  If, after readdressing the medical opinions in the file, the ALJ's RFC determination differs from the one set forth in the May 16, 2018 decision, he shall rely on the testimony of a vocational expert to address steps four and five.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11,** is **GRANTED, in part**.

2. Defendant's Motion for Summary Judgment, **ECF No. 12,** is **DENIED.**

3. This matter is **REMANDED** under Sentence Four of the 42 U.S.C. §405(g) to the Commissioner for further proceedings consistent with this

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 31

Order.

4. Judgment shall be entered in favor of **Plaintiff** and the file shall be

**CLOSED**.

   **IT IS SO ORDERED.**  The District Court Executive is directed to enter this

Order, forward copies to counsel and **close the file**.

   DATED this 13th day of August, 2021.


                                    _/s/ Robert H. Whaley_
                                    ROBERT H. WHALEY
                                    United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 32